**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| MONROE GUARANTY INSURANCE COMPANY<br>6300 University Parkway<br>Sarasota, Florida  34240-8424<br><br>and<br><br>FCCI  INSURANCE COMPANY<br>6300 University Parkway<br>Sarasota, Florida  34240-8424<br><br>     Plaintiffs,<br><br>v.<br><br>BAE SYSTEMS NORFOLK SHIP REPAIR, INC.<br>750 Berkley Avenue<br>Norfolk, VA 24523<br>     <u>Serve</u>:<br>     C.T. Corporation System, Registered Agent<br>     4701 Cox Road, Suite 285<br>     Glen Allen, VA 24060-6808<br><br>     Defendant. | Case No. 2:21-cv-00369 |

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

Plaintiffs, Monroe Guaranty Insurance Company ("Monroe") and FCCI Insurance Company ("FCCI") (together, "Plaintiffs"), by counsel, pursuant to 28 U.S.C. § 2201, Rule 57 of the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the Eastern District of Virginia, state as follows for their Complaint for Declaratory Judgment against Defendant, BAE Systems Norfolk Ship Repair, Inc. ("BAE") and Defendant Central Radio Company, Inc. ("Central Radio").  Defendant BAE has sought status as an additional insured under insurance policies issued by Monroe and FCCI to Central Radio Company, Inc. ("Central Radio") in connection with a lawsuit (the "Underlying Action") filed by claimant Herbert Dixon ("Dixon")

against BAE and arising out of an injury Mr. Dixon alleges he incurred while working on a ship repair project undertaken by BAE and for which Central Radio was a subcontractor. Monroe and FCCI file this Complaint for Declaratory Judgment to seek a declaration of this Court that they have no duty to defend or indemnify BAE in connection with the Underlying Action.

## PARTIES

1.      Plaintiff Monroe is an insurance company formed and existing under the laws of the State of Indiana, with its principal place of business located in Sarasota, Florida. Monroe is, therefore, a citizen of the States of Indiana and Florida, and is not a citizen of the Commonwealth of Virginia. Monroe submits itself to the jurisdiction of this Court.

2.      Plaintiff FCCI is an insurance company formed and existing under the laws of the State of Florida, with its principal place of business located in Sarasota, Florida. FCCI is, therefore, a citizen of the State of Florida, and is not a citizen of the Commonwealth of Virginia. FCCI submits itself to the jurisdiction of this Court.

3.      Defendant BAE is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located at 750 W. Berkley Avenue, Norfolk, Virginia, 23523. BAE, therefore, is a citizen of the Commonwealth of Virginia.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      The venue of this action is properly predicated on 28 U.S.C. § 1391, 28 U.S.C. §127, and Rule 3 of the Local Rules of the United States District Court for the Eastern District of Virginia, in that jurisdiction is founded on diversity of citizenship and this action is brought in the judicial

district and division:  in which a substantial part of the events or omissions giving rise to the claim occurred; in which the Defendant resides or does business; and/or in which the Defendant is subject to personal jurisdiction; the location of the ship repair project undertaken by BAE in Norfolk, Virginia, that gave rise to Mr. Dixon's alleged injury as described in the Underlying Action; and delivery of the relevant insurance policies by the Plaintiffs to Central Radio at its policy address and principal office, 440 Monticello Avenue, Suite 2200, Norfolk, Virginia, 23510-2243.

6.      Additionally, Dixon has filed the Underlying Action against BAE in the Circuit Court for the City of Norfolk, Virginia, Case No. CL19010894-00.  This Complaint for Declaratory Judgment relates directly to the Underlying Action, in that BAE has requested that Monroe and/or FCCI provide a defense and, if applicable, indemnification to BAE arising out of the Underlying Action.

## BACKGROUND

7.      Monroe issued a contract of commercial insurance to Central Radio, bearing policy number CPP 0019609 3, effective from December 19, 2016, through December 19, 2017, including in relevant part, a Commercial General Liability Coverage Part (the "CGL Policy").

8.      A true, accurate, and complete copy of the CGL Policy is attached as **Exhibit 1** and is incorporated by reference as if fully restated herein.

9.      FCCI issued to Central Radio a contract of commercial umbrella liability insurance, bearing policy number UMB0020165 3, effective from December 19, 2016, through December 19, 2017 (the "Umbrella Policy").

10.      A true, accurate, and complete copy of the Umbrella Policy is attached as **Exhibit 2** and is incorporated by reference as if fully restated herein.

11.      Together, the CGL Policy and the Umbrella Policy are referred to in this

Complaint for Declaratory Judgment as "the Policies."

## THE UNDERLYING ACTION

12.     On or about October 9, 2019, Dixon filed a Complaint in the Underlying Action,

styled Herbert Dixon v. BAE Systems Norfolk Ship Repair, Inc., Case No. CL19010894-00, (the

"Underlying Complaint").

13.     A true, accurate, and complete copy of the Underlying Complaint is attached as

**Exhibit 3** and is incorporated by reference as if fully restated herein.

14.     Dixon served the Underlying Complaint upon BAE on October 19, 2019.

15.     The Underlying Complaint stated as follows with respect to Mr. Dixon's alleged

injuries:

> 8.     On or about December 1, 2017, Mr. Dixon was employed by Central Radio Company, Inc. and was working on a job that Central Radio was subcontracted for on the USS San Antonio. The USS San Antonio, an amphibious transport dock for the United States Navy, was undergoing maintenance at the BAE Systems Norfolk ship repair facility and in navigable water. On that date, Plaintiff, who was [sic] as a marine electrician, was leaving the first deck heading out of the ship. He stepped onto the scaffolding and was heading to the flight deck.
>
> 9.     The scaffolding is required to be marked with tags to identify low hanging objects, obstacles and other dangerous hazards for the personnel transiting the scaffolds, so as to avoid injuries to the various personnel on the ship. Local, state and federal law mandates as safe workplace, free of known and unknown perils.
>
> 10.    As Mr. Dixon was approaching the end of the scaffolding, he went to step off and stand up, striking his head on the gang way that leads from the flight deck. There was no indication on the scaffolding that the gangway was an obsticle [sic] as there was no tag marking the entry of the gangway.

11. As a result of striking his head, Mr. Dixon sustained serious debilitating, career ending, permanent injuries, both physical and mental in nature.

**Exhibit 3**, Underlying Complaint, 2 of 4.

16. Based upon those factual allegations, the Dixon Complaint alleged one count of negligence against BAE, stating as follows regarding the specific actions or circumstances about which Mr. Dixon complains:

13. BAE owed a non-delegable duty of reasonable care to Mr. Dixon to ensure that it maintained its premise in a safe condition.

14. BAE was negligent and breached the duty owed to Mr. Dixon in several aspects, including but not limited to:

A. It failed to properly supervise its crew;

B. It failed to properly train its employees;

C. It failed to provide adequate safety equipment;

D. It failed to mark the entry of the low hanging gangway;

E. It failed to maintain its premises in a safe condition;

F. It failed to warn Plaintiff and other ship yard workers or other BAE employees of the low hanging gangway.

G. It violated applicable local, state and federal regulations;

H. It is vicariously liable for its employees' negligence and

I. It had actual and/or constructive notice of its unsafe movement.

15.     As a direct and proximate result of BAE's negligence, Mr. Dixon sustained severe and permanent physical injuries, which resulted in permanent physical pain and suffering, mental anguish, emotional distress and other damages recognize [sic] and provided for under Virginia law. Further, as a direct and proximate result of BAE's negligence, Mr. Dixon also incurred past, present and future medical and pharmaceutical expenses and suffered a loss of earnings in the past, present and future.

**Exhibit 3,** Underlying Complaint, pp. 3-4 of 4.

17.     On or about March 31, 2020, Dixon sought leave to amend the Underlying Complaint, and by Order dated April 3, 2020, the Circuit Court for the City of Norfolk granted leave for the amendment.

18.     A true, accurate, and complete copy of the Amended Complaint ("Underlying Amended Complaint") is attached as **Exhibit 4** and is incorporated by reference as if fully restated herein.[1]

19.     The Underlying Amended Complaint alleges the same essential allegations, but adds Count II – General Maritime to the Underlying Action, including the following additional allegations:

16.     At the time of the accident that resulted in his injuries, Plaintiff, Herbert Dixon, is a citizen and resident of the State of Virginia.   Defendant is a corporation doing business within the City of Norfolk, Virginia and is subject to and within the jurisdiction and venue of this Honorable Court.

17.     This is a civil action seeking money damages under the general maritime laws of the United States and any other applicable state and/or federal law.   This court enjoys concurrent jurisdiction under federal law and state common law.

---

[1] The original Underlying Complaint did not contain a Paragraph 7.  The Underlying Amended Complaint did not add a new Paragraph 7 but did renumber the paragraphs following Paragraph 6 to correct the misnumbered paragraphs.

18.     Through no fault of his own, Plaintiff, Herbert Dixon was injured aboard the USS SAN ANTONIO which was under the control of the defendant at the time of this incident.

**Exhibit 4,** Underlying Amended Complaint, p. 4 of 5.

20.     The Underlying Complaint (as amended) alleges that Dixon seeks damages in the amount of Three Million Dollars ($3,000,000.00) from BAE resulting from an injury he incurred when he allegedly hit his head on a bulkhead during the ship repair project.  **Exhibit 3**, p. 4 of 5; **Exhibit 4**, p. 4 of 5.

21.     Neither BAE nor Central Radio provided notice to the Plaintiffs of Mr. Dixon's alleged injury at the time the injury is alleged to have occurred, which Dixon alleges occurred on or about December 1, 2017.

22.     By letter dated November 6, 2019, Richard P. Stanton, Director of Risk Management for BAE, issued a letter (the "BAE Tender Letter") to Robert Wilson, Vice President of Central Radio, and attached a copy of the Underlying Complaint, and tendered the defense of the Underlying Action to Central Radio.

23.     A true, accurate, and complete copy of the BAE Tender Letter, including all attachments thereto, is attached as **Exhibit 5.**

24.     Central Radio notified the Plaintiffs that BAE had tendered the defense of the Underlying Action.

25.     The Plaintiffs investigated the tender of defense by BAE to Central Radio and BAE's alleged status as an additional insured under the Policies.

26.     By letter dated February 13, 2020, the Plaintiffs advised BAE that the Plaintiffs would provide a defense to BAE in the Underlying Action, pursuant to a complete reservation of rights.

27.     By letter dated February 13, 2020, the Plaintiffs advised Central Radio that the Plaintiffs would provide a defense to BAE in the Underlying Action, pursuant to a complete reservation of rights.

28.     The Plaintiffs presently continue to defend BAE in the Underlying Action under a complete reservation of rights.

### THE CGL POLICY

29.     The CGL Policy provides, in relevant part, commercial general liability insurance pursuant to the terms, conditions, limitations, exclusions, definitions, and other provisions of the CGL Policy. **Exhibit 1.**

30.     The CGL Policy provides limits of liability of $1,000,000.00 for each "occurrence." **Exhibit 1**, Commercial General Liability Coverage Part Declarations, Form 1UNGL-9512-MU-04, 04/04, p. 1 of 4.

31.     The CGL Policy defines the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." **Exhibit 1**, Form CG 00 01 12 07, p. 14 of 16.

32.     The CGL Coverage Part also includes an "Additional Insured" endorsement, as follows:

**ADDITIONAL INSURED – OWNERS, LESSEES OR
CONTRACTORS –
AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION
AGREEMENT WITH YOU – ONGOING OPERATIONS AND
PRODUCTS-COMPLETED OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE (OPTIONAL)**

| **Name of Additional Insured Persons or Organizations** |
|---|
| (As required by written contract or agreement per Paragraph A. below.) |

A.  **Section II – Who Is An Insured** is amended to include as an additional insured:

   1.  Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement in effect during the term of this policy that such person or organization be added as an additional insured on your policy; and

   2.  Any other person or organization you are required to add as an additional insured under the contract or agreement described in Paragraph 1. above; and

   3.  The particular person or organization, if any, scheduled above.

   Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" occurring after the execution of the contract or agreement described in Paragraph 1. above and caused, in whole or in part, by:

   1.  Your acts or omissions; or

   2.  The acts or omissions of those acting on your behalf in the performance of your ongoing operations for the additional insured; or

   3.  Your work" [sic] performed for the additional insured and included in the "products-completed operations hazard" if such coverage is specifically required in the written contract or agreement.

   However, the insurance afforded to such additional insured(s) described above:

   1.  Only applies to the extent permitted by law;

2.      Will not be broader than that which you are required by the contract or agreement to provide for such additional insured;

3.      Will not be broader than that which is afforded to you under this policy; and

4.      Nothing herein shall extend the term of this policy.

B.      The insurance provided to the additional insured does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

1.      The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

2.      Supervisory, inspection, architectural or engineering activities.

C.      This insurance is excess over any other valid and collectible insurance available to the additional insured whether on a primary, excess, contingent or any other basis; unless the written contract or agreement requires that this insurance be primary and non-contributory, in which case this insurance will be primary and non-contributory relative to insurance on which the additional insured is a Named Insured.

D.      With respect to the insurance afforded to these additional insureds, the following is added to Section III – Limits of Insurance:

The most we will pay on behalf of the additional insured is the amount of insurance:

1.      Required by the contract or agreement described in Paragraph A.1.; or

2.      Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

E.     **Section IV – Commercial General Liability Conditions** is amended as follows:

The Duties In The Event of Occurrence, Offense, Claim or Suit condition is amended to add the following additional conditions applicable to the additional insured:

An additional insured under this endorsement must as soon as practicable:

1.     Give us written notice of an "occurrence" or an offense which may result in a claim or "suit" under this insurance, and of any claim or "suit" that does result;

2.     Send us copies of all legal papers received in connection with the claim or "suit", cooperate with us in the investigation or settlement of the claim or defense against the "suit", and otherwise comply with all policy conditions; and

3.     Tender the defense and indemnity of any claim or "suit" to any provider of other insurance which would we cover under this endorsement and agree to make available all other insurance. However, this condition does not affect Paragraph C. above.

We have no duty to defend or indemnify an additional insured under this endorsement until we receive from the additional insured written notice of a claim or "suit".

F.     this endorsement does not apply to any additional insured or project that is specifically identified in any other additional insured endorsement attached to the Commercial General Liability Coverage Form.

**Exhibit 1**, Form CGL 084 (10-13), pp. 1-3 of 3.

33.     The CGL Coverage Part also includes an endorsement that addresses the application of the coverage afforded to an additional insured when other insurance is available:

ADDITIONAL INSUREDS – PRIMARY/NON-CONTRIBUTORY
COVERAGE WHEN REQUIRED BY CONTRACT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to SECTION IV – Commercial General
Liability Conditions, Paragraph 4,
entitled "Other Insurance", subsection b. entitled "Excess
Insurance", paragraph (1):

This insurance is excess over:

> (v)     Any other insurance naming an additional insured as
> an insured on a primary basis, excess, contingent or
> on any other basis unless a written contract
> specifically requires that this insurance be primary
> and noncontributing.  The written contract must be
> currently in effect or become effective during the
> term of this policy and must be executed prior to the
> "bodily injury", "property damage" or "personal and
> advertising injury."

**Exhibit 1**, Form CGL 025 (11-08), p. 1 of 1.

34.     The CGL Policy states as follows, in relevant part, with respect to the insuring

agreement:

> **SECTION I - COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY**
> **DAMAGE LIABILITY**
>
> **1.      Insuring Agreement**
>
> > **a.**     We will pay those sums that the insured becomes
> > legally obligated to pay as damages because of
> > "bodily injury" or "property damage" to which this
> > insurance applies.  We will have the right and duty to
> > defend the insured against any "suit" seeking those
> > damages.  However, we will have no duty to defend
> > the insured against any "suit" seeking damages for
> > "bodily injury" or "property damage" to which this
> > insurance does not apply.  We may at our discretion,

investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1) The amount we will pay for damages is limited as described in Section **III – Limits Of Insurance:** and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period;

\* \* \*

**Exhibit 1**, Form CG 00 01 12 07, Commercial General Liability Coverage Form, Page 1 of 16.

35. The CGL Policy also sets forth certain exclusions from coverage as follows:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**...**

**2.** **Exclusions**

This insurance does not apply to:

**...**

**b.** **Contractual Liability**

"Bodily injury" … for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)**   That the insured would have in the absence of the contract or agreement; or

**(2)**   Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" … occurs subsequent to the execution of the contract or agreement.  Solely for the purpose of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" …, provided:

**(a)**   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

…

**d.**   **Workers' Compensation And Similar Laws**
Any obligation of the insured under a workers' compensation, disability law or any similar law.

**e.**   **Employer's Liability**

"Bodily injury" to:

(1)   An "employee" of the insured arising out of and in the course of:

**(a)**   Employment by the insured; or

**(b)**     Performing duties related to the conduct of the insured's business; …

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**Exhibit 1**, Form CG 00 01 12 07, p.  2 of 16.

36.     The Commercial General Liability Coverage Form defines certain additional

terms as follows:

3.     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

9.     "Insured Contract" means:
       …

       f.     That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the "bodily injury" or property damage" liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

…

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

21.     "Your product":

      a.      Means:

          **(1)**    Any goods or products, other than real property, manufactured, sold, handles, distributed or disposed of by:

               **(a)** You;

               **…**

      b.      Includes:

          **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

          **(2)**    The providing of or failure to provide warnings or instructions.

**22.**     "Your work":

      **a.**      Means:

          **(1)**    Work or operations performed by you or on your behalf; and

          **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

      **b.**      Includes:

          **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability performance or use of "your work"; and

          **(2)**    The providing of or failure to provide warnings or instructions.

**Exhibit 1**, Form CG 00 01 12 07, pp. 13-15 of 16.

    37.    The CGL Policy includes certain conditions with which BAE must comply, including the following:

      **2.**     **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

          **a.**    You must see to it that we are notified as soon as

practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

(1)    How, when and where the "occurrence" or an offense took place;

(2)    The names and addresses of any injured persons and witnesses; and

(3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

…

d.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**Exhibit 1**, Form CG 00 01 12 07, pp. 10-11 of 16.

38.    By enumerating certain provisions of the CGL Policy, the Plaintiffs do not waive any terms, conditions, limitations, exclusions, definitions or any other provisions of the CGL Policy.  The Plaintiffs reserve the right to assert any other specific provisions of the CGL Policy to the extent they become relevant to any allegations in this Complaint for Declaratory Judgment.

## THE UMBRELLA POLICY

39.    The Umbrella Policy states as follows, in relevant part, with respect to the insuring agreement:

**SECTION I - COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

a.    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this

insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages, even if the "suit" is groundless, false or fraudulent, when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.  When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend.  But:

(1)     The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits Of Insurance: and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**     The "bodily injury" or "property damage" occurs during the policy period;

\* \* \*

**Exhibit 2,** Form CU 00 01 12 07, p. 1 of 17, as amended by Form CU 01 57 08 09, p. 1 of 2

(Virginia Changes).

40.     The Umbrella Policy includes the following provision:

**SECTION II – WHO IS AN INSURED**

…

**3.**     Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "underlying insurance".

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

Exhibit 2, Form CU 00 01 12 07, p. 9 of 17.

41.     The Umbrella Policy contains definitions for the terms "insured contract," "occurrence," "bodily injury," "your work," and "your product" consistent with the definitions of those terms that appear in the CGL Policy. **Exhibit 1,** Form CG 00 01 12 07, pp. 13-16 of 16, and **Exhibit 2**, Form CU 00 01 12 07, pp. 14-17 of 17.

42.     The Umbrella Policy defines certain additional terms as follows:

19.     "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

20.     "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance".  The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

…

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's consent.

24. "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

25. "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

**Exhibit 2,** Form CU 00 01 12 07, p. 16-17.

43.     The CGL Policy appears on the "Schedule of Underlying Insurance" of the Umbrella Policy. **Exhibit 2,** Form No. 1-UNCUM-9549-MU-04 07/11, p. 4 of 4.

44.     The Umbrella Policy also includes an exclusion for Contractual Liability – Exclusion 2.b, which is identical to the respective Exclusions in the CGL Policy.  **Exhibit 1,** Form CG 00 01 12 07, pp. 2-5 of 16; **Exhibit 2**, Form CU 00 01 12 07, pp. 2-5 of 17.

45.     The Umbrella Policy also includes the following exclusions :

d.      **Workers' Compensation And Similar Laws**
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**…**

e.      **Employer's Liability**

"Bodily injury" to:

(1)     An "employee" of the insured arising out of and in the course of:

(a)     Employment by the insured; or

    **(b)**    Performing duties related to the conduct of the insured's business;

…

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

…

**Exhibit 2,** Form No. CG 00 01 12 07, pp. 2-3 of 17.

46.    The Umbrella Policy also contains the following obligations of Insureds, including BAE to the extent BAE is an additional insured:

**2.**    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim.  To the extent possible, notice should include:

        **(1)**    How, when and where the "occurrence" or an offense took place;

        **(2)**    The names and addresses of any injured persons and witnesses; and

        **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

    …

    **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**Exhibit 2**, Form CU 00 01 12 07, pp. 11-12 of 17.

47.  The Umbrella Policy contains the following endorsement that amends the Umbrella

Policy with respect to "other insurance:"

> **The following replaces SECTION IV – CONDITIONS, Paragraph 5. "Other Insurance" subsection a.:**
>
> a.  This insurance is excess over and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis.  This conditions will not apply to insurance specifically written as excess over this Coverage Part.
>
> The above will apply to additional insureds unless a written contract specifically requires that this insurance be primary and noncontributing as to the additional insured.  The written contract must be currently in effect or become effective during the term of this policy and must be executed prior to the "bodily injury", "property damage", or "personal and advertising injury."
>
> When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**Exhibit 2,** Form UMB 179 (07 09), p. 1 of 1.

48.  The Umbrella Policy includes the following endorsement entitled "Following

Form Limitation:"

> This endorsement is subject to the terms, conditions, exclusions and any other provisions of the form indicated above [the COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM] and any endorsement attached thereto except with regard to the exclusion below:
>
> The following exclusion is added to **Section I – Coverages Coverage A – Bodily Injury and Property Damage Liability, Paragraph 2. Exclusions …:**

> This insurance does not apply to liability for "bodily injury" [or] "property damage" … unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance for the full limit shown, and then only to the extent coverage for such liability is afforded under the "underlying insurance."

**Exhibit 2,** Form UMB 024 (11 08), p. 1 of 1.

49.    Even if the CGL Policy is determined to apply to Dixon's allegations in the Underlying Action (which the Plaintiffs deny), the Umbrella Policy will not apply to the damages alleged in the Underlying Complaint unless and until all relevant coverages (if any) of the CGL Policy are exhausted.

50.    By enumerating certain provisions of the Umbrella Policy, the Plaintiffs do not waive any terms, conditions, limitations, exclusions, definitions or any other provisions of the Umbrella Policy.  The Plaintiffs reserve the right to assert any other specific provisions of the Umbrella Policy to the extent they become relevant to any allegations in this Complaint for Declaratory Judgment.

**FIRST REQUEST FOR DECLARATORY JUDGMENT**
**The Underlying Complaint Does Not Allege Damages That Would Give Rise to a Duty to Defend or Indemnify BAE as an Additional Insured**

51.    The Plaintiffs restate the allegations in the preceding and following paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

52.    BAE does not qualify as an additional insured under the Additional Insured Endorsement, Form CGL 084, because the specific requirements of that form have not been met.

53.    Even if BAE were to qualify as an additional insured, Plaintiffs' obligation to defend and/or indemnify BAE as an additional insured is limited specifically to only that coverage provided by the Additional Insured Endorsement, Form CGL 084 (10-13).

54.     Neither the Underlying Complaint nor the Underlying Amended Complaint contain allegations that would give rise to a duty to defend or indemnify BAE as an additional insured under the CGL Insurance Contract.

55.     A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that Plaintiffs may have their rights and duties under the Policy determined.

56.     Accordingly, the Plaintiffs seek a declaration from this Court that the Plaintiffs have no duty to defend and/or indemnify BAE for any liability or damages related to the damages alleged by Dixon in the Underlying Action on the grounds that the Underlying Complaint and/or the Underlying Amended Complaint fail to allege any damages for which BAE would qualify as an Additional Insured under the Policies.

## SECOND REQUEST FOR DECLARATORY JUDGMENT
**The CGL Policy Does Not Apply to the Damages Alleged in the Claim and/or Underlying Action Because BAE Has Failed to Timely Notify the Plaintiffs of Dixon's Injury.**

57.     Plaintiffs restate the allegations in the preceding and following paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

58.     The CGL Policy states that "You must see to it that we are notified as soon as practicable of an 'occurrence' … which may result in a claim…." **Exhibit 1**, Form CG 00 01 12 07, pp. 10-11 of 16; **Exhibit 2**, Form CU 00 01 12 07, p. 11 of 17.

59.     The Duties of the Insured, including the duty to provide notice of an "occurrence," apply to BAE as an additional insured as well as to Central Radio.

60.     The Underlying Action alleges that BAE is liable to Dixon arising out of an injury that occurred on or about December 1, 2017.

61.     BAE received notice of Dixon's injury not later than February 20, 2019, when BAE issued a "Nonconformance Deficiency Report (NDR)" to Central Radio for failure to notify BAE of Dixon's injury.  BAE Systems, Norfolk Ship Repair, Nonconformance Deficiency Report, NDR No. 5101194/163, February 20, 2019.

62.     BAE's failure to notify Plaintiffs of Dixon's injury on or before February 20, 2019, violates BAE's duty to "see that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim."

63.     Accordingly, Plaintiffs have no obligation to defend or indemnify BAE in connection with the Underlying Action.

64.     A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that Plaintiffs may have their rights and duties under the CGL Policy determined and avoid the possible accrual of damages.

65.     Accordingly, Plaintiffs seek a declaration from this Court that Plaintiffs have no duty to defend and/or indemnify BAE for any liability or damages related to the Underlying Action on the grounds that BAE failed to provide timely notice to Plaintiffs of Dixon's injury and, thus, failed to comply with a condition precedent to coverage under the CGL Policy.

### THIRD REQUEST FOR DECLARATORY JUDGMENT
**The Umbrella Policy Applies According to Its Terms, and Applies, if at All, Only to Damages That Exceed The Policy Limits of the CGL Policy**

66.     The Plaintiffs restate the allegations in the preceding and following paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

67.     BAE does not qualify as an additional insured under the Umbrella Policy because it does not qualify as an additional insured under the CGL Policy.

68.     Even if BAE were to qualify as an additional insured under the Umbrella Policy, the coverage is expressly limited to the amount of coverage required by the written contract or agreement requiring that BAE be made an additional insured.

69.     The Umbrella Policy provides coverage, if at all, only upon the exhaustion of all applicable underlying insurance.

70.     Dixon has not yet established damages that exhaust all underlying insurance.

71.     A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that Plaintiffs may have their rights and duties under the CGL Policy and the Umbrella Policy determined and avoid the possible accrual of damages.

72.      Accordingly, Plaintiffs seek a declaration from this Court that Plaintiffs have no duty to defend and/or indemnify BAE under the Umbrella Policy unless and until the limits of liability of all available underlying insurance are exhausted, including but not limited to the CGL Policy.

## FOURTH REQUEST FOR DECLARATORY JUDGMENT
### Policy Exclusions Apply

73.     The Plaintiffs restate the allegations in the preceding and following paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

74.     The Policies do not apply to "bodily injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  **Exhibit 1,** Form CG 00 01 12 07, p. 2 of 16; **Exhibit 2,** Form CU 00 01 12 07, p. 2 of 17.

75.     The Plaintiffs have no obligation to defend and/or indemnify BAE on the grounds and to the extent that the Contractual Liability Exclusion would bar coverage for the damages alleged in the Underlying Action.

76.     The Policies do not apply to "any obligation of the insured under a workers' compensation, disability benefits or unemployment law for any similar law." **Exhibit 1,** Form CG 00 01 12 07, p. 2 of 16; **Exhibit 2,** Form CU 00 01 12 07, p. 2 of 17.

77.     The Plaintiffs have no obligation to defend and/or indemnify BAE on the grounds and to the extent that the Workers' Compensation Exclusion would bar coverage for the damages alleged in the Underlying Action.

78.     The Policies do not apply to "Employer's Liability," including "bodily injury" to an "employee" of the insured arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business.  **Exhibit 1,** Form CG 00 01 12 07, p. 2 of 16; **Exhibit 2,** Form CU 00 01 12 07, p. 2 of 17.

79.     The Plaintiffs have no obligation to defend and or indemnify BAE on the grounds and to the extent that the Employer's Liability Exclusion would bar coverage for the damages alleged in the Underlying Action.

80.     A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that the Plaintiffs may have their rights and duties under the CGL Policy and the Umbrella Policy determined and avoid the possible accrual of damages.

81.      Accordingly, the Plaintiffs seek a declaration from this Court that the Plaintiffs have no duty to defend and/or indemnify BAE on the grounds and to the extent that the Contractual Liability Exclusion, the Workers' Compensation Exclusion, the Employer's Liability Exclusion would bar coverage for the damages alleged in the Underlying Action.

## **<u>RESERVATION</u>**

82.     Plaintiffs reserve all of their rights under the CGL Policy, the Umbrella Policy, and applicable law.  By seeking a declaratory judgment based on the foregoing provisions of the CGL

Policy and/or the Umbrella Policy, Plaintiffs do not waive any potential coverage defenses pursuant to any terms, conditions, limitations, exclusions, definitions, or any other provision of the CGL Policy and/or the Umbrella Policy.  Developments in connection with this Complaint for Declaratory Judgment and/or Underlying Action, and/or BAE's rights and obligations, may render additional defenses to coverage ripe for judicial determination.

83.     Plaintiffs reserve the right to amend their Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court enter a judgment declaring the rights and obligations of the parties under the Policies, including, but not limited to, the following:

A.     That BAE does not qualify as an additional insured under the CGL or Umbrella Policy;

B.     That Plaintiffs have no obligation to defend and/or indemnify BAE under the Policies on the grounds that the Underlying Action does not allege damages for which BAE would qualify as an additional insured under the Policies;

C.     That the damages alleged in the Claim and/or Underlying Action are excluded on the grounds that BAE has failed to comply with its Duties In The Event Of Occurrence, Offense, Claim Or Suit under the Policies by failing to provide timely notice;

D.     That, regardless of whether the CGL Policy may apply, the Umbrella Policy is not implicated by the Underlying Action unless and until the limits of liability of all

available underlying insurance are exhausted, including but not limited to the CGL Policy;

E.   That any coverage available to BAE under the Umbrella Policy is limited to the amount required in the written contract or agreement requiring that BAE be made an additional insured;

F.   That the Plaintiffs have no duty to defend and/or indemnify BAE on the grounds and to the extent that the Contractual Liability Exclusion would bar coverage for the damages alleged in the Underlying Action;

G.   That the Plaintiffs have no duty to defend and/or indemnify BAE on the grounds and to the extent that the Workers' Compensation Exclusion would bar coverage for the damages alleged in the Underlying Action;

H.   That the Plaintiffs have no duty to defend and/or indemnify BAE on the grounds and to the extent that the Employer's Liability Exclusion would bar coverage for the damages alleged in the Underlying Action;

I.   That the Plaintiffs have no duty under the Policies to defend BAE in the Underlying Action;

J.   That the Plaintiffs no duty under the Policies to indemnify BAE or anyone else for any damages that might be awarded in the Underlying Action in connection with the injuries alleged by Dixon;

K.   That the Policies do not provide coverage for any claims or damages arising out of the Underlying Action, whether by settlement, judicial award, or otherwise; and

L.   That this Court provide such further and supplemental relief as it deems necessary and proper, including but not limited to, an award of costs in favor of the Plaintiffs.

Date: July 2, 2021

Respectfully submitted,

**MONROE GUARANTY INSURANCE COMPANY**
**and**
**FCCI INSURANCE COMPANY**

By: /s/ Diane U. Montgomery
Diane U. Montgomery (VSB No. 31850)
Robert Tayloe Ross (VSB No. 29614)
MIDKIFF, MUNCIE & ROSS, P.C.
300 Arboretum Place, Suite 420
Richmond, Virginia 23236
(804) 560-9600 – phone
(804) 560-5997 – facsimile
dmontgomery@midkifflaw.com
rross@midkifflaw.com
*Counsel for Monroe Guaranty Insurance Company and*
*FCCI Insurance Company*